## BITKER v. ROSENBERG.
### No. 4957.

Circuit Court of Appeals, Seventh Circuit.
Dec. 21, 1933.

Joseph E. Tierney and Irving A. Puchner, both of Milwaukee, Wis., for appellant.

Morris Karon, Leslie G. Keller, and Walter L. Gold, all of Milwaukee, Wis., for appellee.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

Upon a directed verdict the District Court gave judgment against Bitker, who appeals. Federal jurisdiction is predicated on diversity of citizenship—Rosenberg, plaintiff, of California, and Bitker, defendant, of Wisconsin. The suit was brought on a guaranty by Bitker of the collection of a note of United Investment Company,[1] a Wisconsin corporation, and held by Rosenberg. The note coming due and being unpaid, Rosenberg brought suit against the maker in the state court of Wisconsin, recovering a judgment for its face and unpaid interest, which judgment remaining unpaid, this action was brought against Bitker.

The answer denied diversity of citizenship, alleging that during all the times in question Rosenberg was a citizen of Wisconsin; denied that the note was ever delivered to him (Bitker), and alleges that it was delivered by United Investment Company directly to Rosenberg at Rosenberg's request; admits that Bitker executed the guaranty, but says it was merely as an accommodation to Rosenberg; alleges that the words "interest payable monthly" appearing on the note were added thereto after the note and the guaranty thereon had been executed and delivered and without Bitker's knowledge or consent; and alleges as a separate defense that when Bitker executed the guaranty it was upon condition that Rosenberg obtain the signature of one Julius Jacobson to the guaranty, and that it had been agreed by Rosenberg that Bitker's guaranty was made only upon condition that Jacobson would join as a coguarantor, and that, if he did not so join, Bitker's guaranty would be null and void, and that Jacobson never signed the guaranty.

As to diversity of citizenship, there was practically no evidence to support appellant's contention that Rosenberg was a citizen of Wisconsin when his suit was brought. Federal jurisdiction clearly appears.

Respecting the issues on the merits, appellant contends there was evidence fairly

---

[1] "$18,000   Milwaukee, Wisconsin, January 2, 1931.
"For Value Received * * * One (1) Year * * * after date, We promise to pay to J. L. Bitker or order, at Milwaukee, Wisconsin, Eighteen Thousand and no/100th Dollars with interest at the rate of 7 per cent. per annum until paid, interest payable monthly.
"United Investment Company
"By Julius Jacobson, President.
"Countersigned: Bruno Bitker, Secretary."
"For value received I hereby guarantee the collection of the within note at maturity, or at any time thereafter, with interest at the rate of 7 per cent. per annum, until paid, waiving demand, notice of non-payment and protest.
"J. L. Bitker."

tending to support his side of the controversy, and it was error for the court to direct the verdict for appellee. As to the claim of material alteration after delivery to Rosenberg of the guaranteed note, Bitker's testimony is relied on to support the contention. He said: "The words 'interest payable monthly' in the note, I am positive must have been added after awhile—after I signed the note." Upon so important an issue, requiring clear and satisfactory proof to maintain it, his testimony does not indicate that certainty and positiveness as would meet this requirement. But the entire evidence affords scarcely a scintilla to support the proposition. The note was not prepared by Rosenberg. It was upon a simple form which it seems plain was obtained from Bitker's son Bruno, who was an attorney at Milwaukee. It also fairly appears that it was prepared upon Bruno's typewriting machine, and, from our inspection of the note, that the typewritten words of the note, including the words in question, were written upon the same machine.

■ It appears further that on a previous note for $18,000 given by appellant to appellee (which will hereinafter be referred to) the interest for the entire two-year period of that note was paid by Bitker to Rosenberg *monthly,* and that for three months next following the date of the note in question the interest thereon was in fact sent to Rosenberg monthly. It further appears from Bitker's testimony that a short time after Rosenberg began a suit in the Wisconsin state court to recover unpaid monthly installments of interest on the note in suit, Bitker began a suit against Rosenberg seeking cancellation of the same note, upon the sole ground, as stated in the complaint sworn to by Bitker, that "said plaintiff's guaranty of collection and endorsement was to be conditional upon the defendant obtaining the like guaranty and endorsement from one Julius Jacobson," which was never obtained. That so important a defense as a material change in the terms of the note after its delivery was not then in the mind of Bitker is manifest from the fact that, in setting out the note as part of Bitker's answer in that cause, not only is it set out in the exact words as it appears above, including the provision respecting monthly payment of interest, but, with attention so challenged to this provision of the note, no mention is made nor defense then asserted on this subsequently alleged material alteration of the note. Bitker testified to knowing of the monthly payments of interest which had been made on the note (indeed, he, his son Bruno and Jacobson owned all the stock of United Investment Company), and to receiving from the Burlington bank (which evidently held the note) a "lot of letters" demanding monthly interest payments; and that some time before *May 28, 1931,* he told the bank he would see to it that the *monthly* interest then unpaid was paid at once, interest which, but for the monthly interest clause of the note, would not have been due until January 2, 1932. Such complete and admitted acquiescence in the expressed stipulation for monthly interest payments, coupled with the other overwhelming proof that the clause was in the note when delivered, so effectively neutralizes Bitker's half-hearted and insufficient testimony that the clause was not in the note when guaranteed and delivered that, in our judgment, the trial court properly concluded there was no substantial proof of the alleged alteration.

■ Respecting Bitker's contention of an agreement that unless Rosenberg secured Jacobson's signature as a coguarantor Bitker's guaranty should be void, the fact situation is very much the same. Late in 1928, after negotiations extending over a considerable time, Rosenberg sold to Bitker for $18,000 certain shares in corporations wherein both held stock, taking Bitker's note for that amount payable in two years, with interest at 6 per cent. per annum. It does not definitely appear what interest-paying dates that note specified, beyond the uncontroverted fact that for the two years Bitker paid the interest to Rosenberg *monthly.* The best we can make out of Bitker's contention is that he and Rosenberg had a verbal understanding, before the first note was given, that if Bitker bought the stock he might at any time tender it back to Rosenberg and Rosenberg would return the note; and that, pursuant to such understanding, after the first note matured, Bitker elected to take back his note and return Rosenberg the stock, and that this was done; that thereafter Rosenberg sold the stock to United Investment Company for $18,000, and that at Rosenberg's request the corporation made its note to Bitker, who in turn indorsed it to Rosenberg with his (Bitker's) guaranty of its collection, to be valid only if Jacobson also signed the guaranty, and that this guaranty was for Rosenberg's accommodation only.

This circuitous alleged transaction was evidently intended to make plausible Bitker's claim that the original transaction was then wholly ended—with Rosenberg again holding the stock, and Bitker's note delivered up and canceled—in order that it would appear there was no relation between that transaction and the one which followed.

Bitker was in California in 1927, and while there Rosenberg besought him to find a buyer for the stock, which Bitker undertook to do. Nothing was accomplished up to Bitker's return home, and thereafter negotiations were carried on by correspondence. The letters clearly indicate that Bitker had some prospective purchasers for the stock, and that, when the asked price was low enough, he proposed to buy the stock himself, which he did. The letters themselves, of which the relevant portions are printed in the margin,[2] indicate

close bargaining on both sides, resulting in the acceptance of Bitker's final offer for the stock, without suggestion of any condition upon the sale, or of any option in Bitker to return the stock and get back his note.

It does not appear that United Investment Company paid anything for the stock beyond giving its note for the same amount for which Bitker gave his note when he acquired the stock. Quite naturally Rosenberg would not release Bitker in exchange for the corporate liability alone, and so the guaranty by Bitker of the corporate note to Rosenberg was a transaction in which it might reasonably have been expected the parties would enter.

That this was in fact the transaction is apparent from Bitker's letter to Rosenberg written just after the note in question was delivered. This letter was prepared by Bruno and is shown in the margin.[3] Assuming that

---

[2] (Bitker to Rosenberg)

"J. L. Bitker
"Milwaukee          Oct 18/28
"Dear Bill I have again spoken to Oscar about your stock in the Stratford—The only thing he might do, is to pay you 6% since you had it—He says to figure out what your stock costs you, plus 6%, then, I do not know whether it is cash or not— In that case, I would be willing to buy it myself from you at not over 1½ per share, if you would take my note for 2 years at 6%—It does not appear at this time that any dividends will be or can be paid for some time to come. Think it over, and let me know—, and I too want to think this over— Here is good luck to you in your deals.
"J. L. Bitker"

(Rosenberg to Bitker)          "October 22, 1928
"Mr. J. L. Bitker, 10th Floor Wells Bldg., Milwaukee, Wisconsin.
"Dear J. L.,—Regarding the Brackman matter, will say that it is hard for me to make up my mind to accept 1¼ for one. That makes just about a fair interest rate since I had it. This offer, no doubt, includes Republic Building Company. You know, J. L. that the value in both of these holdings is by far more than double.
"If Brackman wants it, I would be willing to sell for $20,000.00 (both holdings), providing he would give me $10,000.00 cash and his note for $10,000.00 payable in one year with interest at 7% per annum, payable quarterly. However, if you want it personally, I am willing to take your note for $20,000.00 payable in two years after date of note, with interest at 6% per annum, payable quarterly.
"I believe that this is a liberal proposition, and which ever gets it will make a nice profit. I can use the money very well, now, in our business, or I would be pleased to stick with the boys. Tell Brackman what I have to say and see what you can do for me. I am sure you will have no difficulty in accomplishing a sale.
"Regarding my bank, as per your letter, will say that although I have no more connections with them, now, I shall endeavor to do all within my power for you when the time comes. I am writing the bank to-day to send you your note marked paid with the collateral. I had the interest figured and it amounts to $107.53—at 7% which is the way the note reads.
"Again I want to thank you for the favor, and with kindest regards to the family, I am     Yours"

(Rosenberg to Bitker)          "November 5, 1928
"Mr. J. L. Bitker, 1038-1039 Wells Building, Milwaukee, Wisconsin.
"My dear J. L.,—Received your two letters, yesterday, and contents of both were carefully noted.
"I really feel, J. L., that I am entitled to the amount I asked you for in my last letter, which was $20,000.00, as the stock, according to the talk I had with Bruno when last in his office, has a value, now, of at least $35,000.00. The Loop Building stock, alone, is worth about $15,000.00.
"I am sure, being right close to the activities, you are next to the inside dope, so it is all in your favor. I, therefore, think that you ought not to hesitate if I give you a price of $18,000.00 on the whole business to be paid in four (4) payments of $4,500.00,

each, every six (6) months. The reason I suggest the four payment plan is that I feel it may be too much to pay that amount all in one sum.
"Should I be so situated that I am not in need of the money when it is due, I shall be only too glad to re-new it. I am sure, J. L., that I will be glad to cooperate with you in any way to suit your convenience.
"You can make out the notes dated November 1, 1928, as follows:
one for $4500.00 due 6 months after its date,
one for $4500.00 due 12 months after its date,
one for $4500.00 due 18 months after its date, and
one for $4500.00 due 24 months after its date,
with interest at six (6) per cent per annum, payable quarterly.
"If I were in the position that I used to be in, you can rest assured, J. L., that I'd never do this and the reason I am doing this is because I need the income. I am sure, J. L., that this is a wonderful deal for you and that you will get a good return on this investment.
"Otherwise, have not much else to write. Will send you the stock certificate under separate cover, by air mail, all properly indorsed.
"With kindest regards, I remain     As ever yours"

(Bitker to Rosenberg)
"J. L. Bitker
"Milwaukee          Nov 9/28
"Dear Bill—I have yours dated Nov. 5th—In reply I wish to say that while you are asking $500.00 more than I offered I am willing to accept the proposition, but will not buy it unless the note is for 2 years straight—You know that I always met my obligations, and so would take care of this one—You are right that the stock ought to show me a profit, and I admit I am buying it as a speculation however, with conditions now existing on the Nixdorf hotel, which may drag on for a year or two, before things are cleaned up, & with no dividends from the Stratford, I could not undertake the *purchase on terms less than 2 years straight*—I will pay the interest quarterly. Which ever way you decide in this, will be agreeable to me, so let me know your decision, and if my proposition is acceptable, then mail me the stock and I will forward my note to you dated as you request—With best regards I am
"Yours truly          J. L. Bitker"

[3] "Milwaukee, Wisconsin, January 14, 1931.
"Mr. William Rosenberg, Elks Club, Milwaukee, Wisconsin.
"Dear Bill: With reference to my purchase from you of 85 shares of the preferred stock and 85 shares of the common stock of Stratford Realty Company,

therein Bitker stated the truth, it is apparent that the guaranty was but a form for continuing Bitker's original liability to Rosenberg.

Besides, the form of the guaranty on the note is in the first person singular. Appellant's counsel urges that this should have no weight, since in the use of forms it is not controlling whether the singular or plural is employed, as often the one may be employed and the other intended. But it happens that in this guaranty, which is stamped on the back of the note, the place for the pronoun is blank, and in this space the word "I" is written by hand.

While Bitker was being pressed each month by the Burlington bank to pay the interest on the note in question, and he promised to see it paid, there was in all that time no suggestion upon his part that his guaranty was invalid because Jacobson had not joined therein, although he testified he knew a few days after the note was delivered that Jacobson had not signed the guaranty. It would tax credulity to the breaking point to conclude that, with his evidently close association with Jacobson and Bruno, he did not know whether Jacobson had signed an obligation whereby Bitker's ultimate personal liability to Rosenberg would be shared by Jacobson.

From all this it is so overwhelmingly apparent that appellant's contentions in resistance of his guaranty are groundless that we conclude the District Court was fully warranted in rejecting them by directing the verdict.

Appellant claims that reference to the note sued on as an instrument of evidence, as well as to the letter last quoted, is improper because it does not appear that either of these was offered and received in evidence. It is true the record fails to show their formal offer; but they bear the identification marks of the stenographer, and it appears were actually used on trial. In commenting on appellee's motion for a directed verdict, Judge Evans called particular attention to these instruments and quoted from them. If then it was contended that they were not in evidence for lack of formal offer, it was the duty of either side, objecting thereto, to call the court's attention to the fact, and the omission—if indeed it was such—would undoubtedly then have been corrected. It was evidently then taken for granted by all concerned that they had been offered, and they were so treated without objection. Even the assignment of errors has no reference to their use by the court in passing on the motion for directed verdict. It comes too late to raise that point in the first instance in briefs on appeal.

Upon consideration of this record, we believe the District Court was right in stating that, had the case been submitted to the jury and verdict for appellant returned, it would have been the duty of the court to set it aside.

The judgment is affirmed.

plus 66⅔ shares of the common stock of Loop Building Company, this is to advise you that I have sold the same to the United Investment Company and am accepting in payment therefore the note of the United Investment Company for $18,000.00, which note I am turning over to you in payment of the stock purchased by me from you. I am giving you this letter in accordance with your request so that you will have a record to show how you hold the note of the United Investment Company.
  "Very truly yours,     J. L. Bitker."
  "Bankers Bldg. c/o Bruno Bitker."